CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 1 7 2014

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal Action No. 4:11-cr-00030-1** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **BEDE NGALA,** | ) | **By:  Hon. Jackson L. Kiser** |
| Petitioner. | ) | **Senior United States District Judge** |

Bede Ngala, a federal inmate proceeding pro se, filed a motion to vacate, set aside, or

correct sentence, pursuant to 28 U.S.C. § 2255. Petitioner alleges that he received ineffective

assistance of counsel, in violation of the Sixth Amendment. The United States filed a motion to

dismiss, and Petitioner responded, making the matter ripe for disposition. After reviewing the

record, I dismiss the § 2255 motion for lacking merit.

## I.

Petitioner and others conspired to commit and did commit access device fraud and

committed aggravated identify theft by receiving emails of stolen credit card account numbers,

imprinting those stolen numbers to gift cards and other cards, and using those imprinted cards to

make purchases. Petitioner and his co-conspirators then sold the purchased items for illicit profit

until they were arrested.

Petitioner waived the right to be indicted by a grand jury and, pursuant to a written plea

agreement, pleaded guilty to conspiracy to commit credit card fraud, in violation of 18 U.S.C.

§ 371 ("Count One"); counterfeit access device[1] fraud, in violation of 18 U.S.C. § 1029(a)(1)

("Count Two"); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) ("Count

---

[1] An "access device" is "any card, plate, code, account number, electronic serial number, . . . personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)[.]" 18 U.S.C. § 1029(e)(1).

Three"). I granted the United States' motion for substantial assistance and sentenced Petitioner to twelve months' incarceration for Counts One and Two, to run concurrently, and twenty-four months' incarceration for Count Three, to run consecutively. Petitioner did not appeal but did timely file the instant motion to vacate, set aside, or correct sentence. Although Petitioner argues that counsel rendered ineffective assistance, his arguments have no merit, and I must grant the United States' motion to dismiss.

## II.

A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. A petitioner who pleaded guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Petitioner presents two claims of ineffective assistance of counsel: 1) counsel was ineffective for failing to object to the aggravated identity theft charge, and 2) counsel's bad advice that Petitioner would not be sentenced for aggravated identity theft made the guilty plea

to that charge involuntary. For the following reasons, Petitioner fails to establish any ineffective assistance of counsel, and the motion to dismiss must be granted.[2]

## A.

Citing Flores-Figueroa v. United States, 556 U.S. 646 (2009), in support, Petitioner faults counsel for not objecting to the aggravated identity theft charge because nobody's name was imprinted on the access cards to which the stolen credit cards account numbers were recoded.[3] Petitioner believes he was prejudiced by this failure because he allegedly did not know the identities of the stolen credit card accounts' owners, and thus, could not be convicted of aggravated identity theft. An analysis of both the legal and factual support of this claim reveals its lack of merit.

The premise of Petitioner's legal argument is a person cannot be considered guilty of aggravated identity theft by knowingly having another person's credit card account number without permission and intentionally recoding that account number onto a card that does not have another person's name on it. This interpretation is as erroneous now as it was at the time of his plea agreement. Petitioner confuses "the means of identification" as incorrectly being the nameless card to which he encoded the stolen credit card number. Instead, "the means of identification" for which he is culpable are the stolen credit card account numbers that were unique to people. See 18 U.S.C. § 1028(d)(7) (defining means of identification as, inter alia, an access device); United States v. Mitchell, 518 F.3d 230, 234 (4th Cir. 2008) ("The definition, in

---

[2] The United States argues that Petitioner cannot pursue these claims via § 2255 because of the collateral attack waiver in the written plea agreement. However, the waiver specifically excludes claims based on the ineffective assistance of counsel, and thus, the claims do not fall within the scope of the waiver. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver).

[3] The "federal criminal statute forbidding '[a]ggravated identity theft' imposes a mandatory consecutive 2-year prison term upon individuals convicted of certain other crimes if, during (or in relation to) the commission of those other crimes, the offender 'knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.'" Flores-Figueroa, 556 U.S. at 647 (quoting 18 U.S.C. § 1028A(a)(1)).

other words, allows for an identifier, taken alone or together with other information, to qualify as a means of identification so long as the sum total of information identifies a specific individual.").

Furthermore, the facts of the conspiracy establish that Petitioner knew "that the something he has unlawfully transferred is . . . a real ID belonging to another person rather than, say, a fake ID (i.e., a group of numbers that does not correspond to any real Social Security number)." Flores-Figueroa, 556 U.S. at 647. The United States' proffer of evidence, to which Petitioner did not object, revealed that:

> [Petitioner] and other conspirators engaged in a conspiracy to commit credit card fraud. . . . While in Danville[,] they received stolen credit card account numbers and they began recoding those numbers onto gift cards and other products. . . . After having the stolen credit card account numbers, [Petitioner] and other conspirators used those cards and also disclosed those cards to other members of the conspiracy to make purchases of cigarettes[] and retail gift cards for various stores. . . . [Petitioner] knew that these cards were stolen credit card numbers of other persons and they did not have the lawful authority from any of those victims to use the stolen credit card numbers. Specifically, while in Danville[,] [Petitioner] knowingly used the credit card account of another real person without that real person's lawful authority, which [Petitioner] used to purchase items at a store on July 4, 2011. . . . The stolen credit card account number was a means of identification of another person which [Petitioner] did not have lawful authority to possess, traffic in and use.

Plea H'rg Tr. 19-21.

Also, Petitioner acknowledged while testifying under oath in United States v. Yeboah, No. 4:11-cr-00031-1 (W.D. Va. Nov. 9, 2012), that he used stolen credit card account numbers to make purchases. Petitioner explained how he saw co-conspirators exchange small bags of approximately fifteen credit cards, a co-conspirator recoded the stolen credit card account numbers onto other access devices, and Petitioner used an access device recoded with someone else's stolen credit card account number to purchase items. No. 4:11-cr-00031-1, Day 3 Trial Tr. 71:16-18, 72:9-16, 74:15-20.

Although the Visa and Mastercard credit cards used to purchase items did not have names written on the front of them, Petitioner's testimony clearly reveals that he understood, long before his plea hearing, that the physical cards were recoded with stolen credit card account numbers of other people. Id. 78:12-16, 88:4-25 – 90:1-21. For example, Petitioner admitted to realizing in June 2011 that he was violating the law when he received the stolen credit card numbers in order to fraudulently purchase items. Id. 4:4-25 – 5:1-6. Petitioner reiterated during direct examination that he understood, at the time of the offenses, why he and his co-conspirators were recoding other people's stolen credit card account numbers to other cards. Id. 9:14-25 – 13:1-17, 79:13-15, 81:17-25 – 82:1-5. Consequently, Petitioner's current statement that he never knew the imprinted access devices contained stolen credit card account numbers belonging to real people is patently frivolous and false when compared to his sworn testimony at trial.[4] See United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible,' and 'patently frivolous or false.'"). Accordingly, this claim must be dismissed.

### B.

Petitioner alleges that his guilty plea for Count Three was not voluntary because counsel assured him that he would not be sentenced for aggravated identity theft. Again, I find Petitioner's claim contradicted by the record.

Petitioner understood the penalties of pleading guilty to aggravated identity theft within his plea agreement and during his guilty plea hearing. In his plea agreement, Petitioner initialed

---

[4] In the absence of any evidence from Petitioner that a random sequence of numbers not belonging to any real person could be used to successfully purchase items, I rely on the common understanding that a credit card account must be valid and belong to another person, and not a random sequence of numbers, in order to successfully purchase items with a credit card account.

the page to indicate that he understood "[t]here is a mandatory minimum sentence of imprisonment for a term of two years" for aggravated identity theft. During the plea hearing, Petitioner affirmed that counsel explained to him what the maximum sentences were for the three counts to which he pleaded guilty and that he understood pleading guilty to aggravated identity theft would result in a mandatory, two-year consecutive sentence. Furthermore, Petitioner affirmed that no one made threats or promises beyond the written plea agreement to compel him to plead guilty. There is nothing in the record to support Petitioner's current claim that his guilty plea was not voluntary or that he believed he would not be sentenced to the mandatory twenty-four month sentence for aggravated identity theft upon pleading guilty to that charge. See Lemaster, supra (finding a subjective belief in a § 2255 to be patently frivolous and false when contradicted by prior sworn testimony). Accordingly, this claim must be dismissed.

### III.

For the foregoing reasons, I grant the United States' motion to dismiss and dismiss the § 2255 motion. Based upon my finding that the Petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

    **ENTER**: This 11th day of March, 2014.

Senior United States District Judge